**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2591-17T2

SUCHARITHA PATI,

    Plaintiff-Appellant,

v.

RAJESH KOMAKULA,

    Defendant-Respondent.

_____

Submitted June 4, 2018 — Decided July 24, 2018

Before Judges Sabatino and Ostrer.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No. L-
4841-17.

Robert H. Goodwin, attorney for appellant.

Susheela Verma, attorney for respondent.

PER CURIAM

    Plaintiff Sucharitha Pati appeals from the trial court's order vacating, on conflict of interest grounds, a July 2017 award of an umpire acting pursuant to the New Jersey Alternative Procedure for Dispute Resolution Act (APDRA), N.J.S.A. 2A:23A-1 to -30. We remand for the trial court to consider a letter from

the umpire addressing the claimed conflict, which we deem a clarification of the umpire's decision.

The umpire is a retired Superior Court judge affiliated with a law firm in the county where he served. The parties selected the umpire to resolve various property and financial issues that remained after entry of their 2012 final judgment of divorce. A November 2015 consent order formalized the parties' selection. After numerous testimonial hearings in 2016, and written summations in early 2017, the umpire issued an initial decision and a supplement to that decision in July 2017.

In an "amended verified complaint,"[1] defendant Rajesh Komakula identified various alleged flaws in the alternative dispute resolution (ADR) process that justified vacatur. Of principal interest to us at this stage is defendant's allegation he was prejudiced by the umpire's partiality. See N.J.S.A. 2A:23A-13(c)(2). The trial court ordered vacatur solely on that ground,

---

[1] Defendant did not swear or certify the allegations were true. See R. 1:4-4(b). Rather he stated "the statements contained in the [complaint] are true and correct to the best of my knowledge and recollection." A certification made upon information and belief is not a valid certification. See Pascack Cmty. Bank v. Universal Funding, LLP, 419 N.J. Super. 279, 288 (App. Div. 2011) (rejecting "certification" that lacked the language mandated by Rule 1:4-4(b)).

and the umpire addressed it in his clarification, which the trial court declined to consider.[2]

Defendant asserted that the umpire failed to disclose a prior relationship with plaintiff's attorney. He alleged that in January 2017 — which was after the testimonial ADR hearings had been completed and before submission of written summations — he learned that the umpire and plaintiff's attorney had both served, and met often, as trustees of a county bar foundation.[3] He also learned that the umpire's secretary and plaintiff's attorney participated in the same community theater group. Defendant stated he would not have consented to the umpire's selection, had he known of those relationships. In subsequent submissions to the court, defendant alleged the umpire repeatedly addressed plaintiff's counsel during the ADR proceedings by his first name, but always referred formally to defendant's counsel. Defendant also

---

[2] Defendant also alleged: (1) the umpire engaged in misconduct, see N.J.S.A. 2A:23A-13(c)(1), by engaging in ex parte communications with plaintiff's counsel, failing to enforce prior commitments between the parties, and compelling defendant to execute a so-called agreement regarding two properties in India; (2) the umpire exceeded his powers, see N.J.S.A. 2A:23A-13(c)(3), by deciding issues that were not referred to him, and failing to decide issues that were; and (3) the umpire acted as a mediator instead of an arbitrator. On the basis of many of these allegations, defendant also contended the umpire failed to follow APDRA's procedures. See N.J.S.A. 2A:23A-13(c)(4).

[3] The complaint alleged "bar association," but it was later clarified that the two served on the related foundation.

contended the umpire's substantive decisions reflected his partiality.

Defendant's allegations should have come as no surprise. He and his counsel claimed bias in the umpire's decisions throughout the ADR process. In defense counsel's February 2017 written summation, she asked the umpire to withdraw based upon his "pre-existing relationship with the Plaintiff's counsel," and his alleged ex parte communications.

The umpire rejected these arguments in his initial written decision, stating he had "neither a personal, nor business, nor recreational relationship" with plaintiff's counsel. He acknowledged, as a member of the county bar, he had seen and spoken to plaintiff's counsel at bar related meetings. He noted that he also saw defendant's counsel at other dinners that judges and attorneys attended. He denied any bias for or against any attorney who participated in bar functions. He could not recall plaintiff's counsel ever appearing before him when he was a judge, and he was unaware, until recently, that his secretary and counsel participated in the same theater.

In granting vacatur, the trial court held in an oral decision that an arbitrator was responsible "to disclose any relationship or transactions that he may have with the parties" or their representatives (citing <u>Barcon Assocs., Inc. v. Tri-County Asphalt</u>

Corp., 86 N.J. 179, 192 (1981)). The trial court added that when an arbitrator fails to do so, "'the reviewing court may vacate the award if it concludes the undisclosed fact would have been such as to lead a reasonable person to object to the designation of the arbitrator in question'" (quoting Barcon Assocs., 86 N.J. at 195). The court held that the umpire's and plaintiff's counsel's undisclosed joint service on "a small foundation that meets on a monthly basis" met that standard for vacatur.

The judge added that "[a]n arbitrator, like a judge, must avoid even the appearance of bias" (citing Commonwealth Coatings Corp. v. Cont'l Cas. Corp., 393 U.S. 145, 150 (1969)). The court held that a person would question the umpire's impartiality because he referred to plaintiff's counsel by his first name sixteen times during the ADR hearings, and always formally addressed defense counsel. The court ordered the selection of a new umpire and a new ADR process.

Plaintiff moved for reconsideration. At that point, the umpire learned of defendant's complaint and the vacatur order. In January 2018, the umpire submitted a letter to the judge, which addressed, in greater detail than in his award decision: (1) the nature of his and plaintiff's counsel's joint service on the county bar foundation; and (2) his form of addressing both attorneys in the ADR hearings. The umpire noted the foundation's board

consisted of twenty-two members. Its monthly meetings lasted no more than hour. There was no meal or beverage service, or social gathering connected to the meetings. Because of their respective absences, the umpire and attorney were present at only nine meetings since the umpire was appointed to the foundation in June 2015.

The umpire also observed that, in the course of four selected days of hearings, he addressed plaintiff's counsel as "Mr." twenty times, and by his first name only four times. The umpire explained that he had difficulty pronouncing defense counsel's first name. He regretted not making the effort to learn it. The umpire contended that his relationship with plaintiff's counsel was not "substantial" and suggested that it did not create an appearance of bias, impropriety, or interest. He contended that appearance alone is not a basis for vacatur.

In a February 2018 written decision denying the reconsideration motion, the trial court declined to consider the umpire's letter, stating, "No rule or precedent is cited that authorizes the Court to consider such a submission." The trial court adhered to its original view that the umpire's failure to disclose his contemporaneous participation "on a small board of directors" was a sufficient basis to vacate the award. The

umpire's manner of address "provide[d] additional evidence for a reasonable person to perceive partiality."

We granted plaintiff's motion for leave to appeal from the trial court's vacatur order. Plaintiff contends that there were insufficient grounds to question the umpire's impartiality and to vacate the award.

We decline to reach the merits of the appeal, as we conclude, procedurally, the trial court erred in refusing to consider the umpire's letter. The letter constitutes a clarification and explanation of the umpire's original decision. It did not alter or modify the result. It was not untimely, as it was submitted in advance of the trial court's decision on the motion for reconsideration.

We recognize that APDRA does not expressly authorize an umpire to supplement or clarify his decision, as the umpire did in this case. However, the statute does not prohibit it either.

We are cognizant of the common law doctrine of functus officio, which literally means "office performed," and generally means that with issuance of a final award, an arbitrator's commission is terminated, as is the authority to go back and modify or revise the award. See Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 360-61 (1994); Kimm v. Bisset, LLC, 388 N.J. Super. 14, 26-27 (App. Div. 2006); Held v. Comfort Bus

Line, Inc., 136 N.J.L. 640, 641 (Sup. Ct. 1948); see also Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local 182B v. Excelsior Foundry Co., 56 F.3d 844, 845-47 (7th Cir. 1995). The doctrine is designed to shield a sporadic quasi-judicial officer from "the potential evil of outside communication and unilateral influence which might affect a new conclusion." La Vale Plaza, Inc. v. R.S. Noonan, Inc., 378 F.2d 569, 572 (3d Cir. 1967); see also Glass, Molders, 56 F.3d at 847 (stating that "arbitrators are less sheltered than sitting judges, and it is feared that disappointed parties will bombard them with ex parte communications and that the arbitrators, not being professional judges or subject to the constraints of judicial ethics, will yield").

However, exceptions to the doctrine "permit an arbitrator to correct a mistake, generally of a clerical or computational nature, . . . to 'adjudicate an issue which has not been submitted' but not decided, . . . and to 'clarify' an award '[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, [such that] an ambiguity arises which the arbitrator is entitled to clarify.'" Kimm, 388 N.J. Super. at 27 (quoting La Vale Plaza, 378 F.2d at 573). Concededly, the umpire's letter was not intended to clarify ambiguity in his award. However, we perceive no basis to bar an umpire under the common

law or APDRA from, sua sponte, providing additional reasoning for a decision, and we discern compelling reasons to allow it.

As the parties chose to submit to APDRA, we need not rely on the scope of the clarification authority under the revised Arbitration Act, a different statute. See N.J.S.A. 2A:23B-20(a)(3), -20(b) (authorizing parties to apply to an arbitrator to clarify an award within twenty days of notice of the award); N.J.S.A. 2A:23B-20(d)(3) (authorizing a court to resubmit a matter to an arbitrator to clarify an award). Yet, we note the revised Arbitration Act was intended to remove any lingering question under the prior Act, based on the functus officio doctrine, about the power to remand to arbitrators for clarification. 7 Uniform Laws Annotated, Business and Financial Laws, cmt. 2 on § 20 at 70-71 (Master ed. 2009). The revised Act was intended to "enhance[] the efficiency of the arbitral process." Id. at 71.

Unlike the Arbitration Act, APDRA requires an umpire to state fact-findings and legal conclusions in support of the award. N.J.S.A. 2A:23A-12(a) ("The award shall state findings of all relevant material facts and make all applicable determinations of law."). The scope of judicial review of an umpire's decision is broader than the review of an arbitral award, in that a court may vacate an award if the umpire "commit[ed] prejudicial error by erroneously applying law to the issues and facts presented for

alternative resolution." N.J.S.A. 2A:23A-13(c)(5). The court may modify an award on the same ground. N.J.S.A. 2A:23A-13(e)(4).[4]

To enable effective judicial review, it behooves the umpire to set forth ample fact-findings and legal conclusions. Cf. Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (discussing importance of adequate findings of fact and conclusions of law under Rule 1:7-4 to enable effective appellate review of trial court decisions). A supplemental explanation and clarification that does not alter the final award promotes effective judicial review without undermining the interest in finality. See Mt. Hope Dev., 154 N.J. at 149 (noting that APDRA, like the Arbitration Act, promotes finality).

Allowing a clarifying post-award submission may also promote efficiency, if the umpire's submission obviates an order vacating an award and requiring the parties to bear the expense of a re-run of the ADR process. Particularly where the issue involves the umpire's personal relationships and alleged partiality, which the umpire is uniquely situated to address, permitting a clarifying submission would also promote the search for the truth.

---

[4] On the other hand, APDRA limits the right to appeal from the trial court's decision, subject to certain exceptions based upon public policy. N.J.S.A. 2A:23A-18(b); see Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 150-52 (1998).

A-2591-17T2

After the filing of a notice of appeal, a trial court may supplement, for the benefit of the reviewing court, the reasons previously given for its order. R. 2:5-6(c). We perceive no reasoned basis for barring an umpire under APDRA from doing something similar.

In sum, the trial court was obliged to consider the umpire's submission before deciding defendant's application for vacatur. We intend no criticism of the trial judge in this case; he lacked the guidance of this opinion. Nor do we comment on whether the trial judge should come to a different conclusion after considering the submission. We express no opinion at this stage on the merits of defendant's application, or the substantive points raised on appeal.

Vacated and remanded for reconsideration. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION